**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janine Klein,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>    Defendant. | No. CIV 13-1584-TUC-DCB (LAB)<br><br>**REPORT AND RECOMMENDATION** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g).

The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

The court finds the final decision of the Commissioner is supported by substantial evidence and free from legal error. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

PROCEDURAL HISTORY

Klein filed her application for disability insurance benefits in April of 2010. (Tr. 37) She alleged disability beginning on January 1, 1994, due to deafness, chronic depression, lower back problems, TMJ (temporomandibular joint disorder), carpal tunnel syndrome left, and neck problems. (Tr. 218)

Her claim was denied initially (Tr. 118-121) and upon reconsideration (Tr. 124-126). Klein requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Laura Speck Havens on February 2, 2012. (Tr. 63) At the hearing, Klein amended her alleged onset date to October 16, 2009. (Tr. 5, 65) In her decision, dated February 29, 2012, the ALJ found Klein was not disabled through her last insured date, September 30, 2011, because she could perform past relevant work as a retail clerk. (Tr. 44) In the alternative, the ALJ found Klein could work as an office helper, assembler, or hand packager. (Tr. 45)

Klein appealed and submitted additional exhibits. (Tr. 4) The Appeals Council granted review and issued a decision on September 4, 2013. (Tr. 6) The Appeals Council adopted the bulk of the decision of the ALJ and extended her conclusions to the date of the ALJ's decision because the Appeals Council found Klein's last insured date was one year later than the ALJ calculated. (Tr. 4-6) The decision of the Appeals Council is the final decision of the Commissioner. (Tr. 1-3)

Klein subsequently filed this action appealing the Commissioner's final decision. (Doc. 1) She argues the ALJ erred by finding her previous work as a retail clerk was significant gainful activity. (Doc. 15) She also argues the ALJ erred by concluding she could return to her previous work and, in the alternative, could perform other work in the national economy. (Doc. 15) The court finds the ALJ's final decision was supported by substantial evidence.

Claimant's Work History and Medical History

Klein was born in February of 1960 and has a high school diploma. (Tr. 66, 67) She was 52 years old when the ALJ issued her opinion.

Between 2003 and 2004, Klein worked part-time as a retail clerk in the shoe department at Sears. (Tr. 67-68, 187, 507, 516) She quit "because of disliking the crowds." (Tr. 516) In that job, she earned $3,163.34 in 2003 and $7,007.33 in 2004. (Tr. 187) Since then, she has worked as a caregiver in a group home and as a busser/server in a restaurant. (Tr. 219) At the time of the hearing, she was working a few hours per week as a water aerobics instructor. (Tr. 67-68)

Mental Impairments

In June of 2008, Klein was evaluated by Noelle Rohen, Ph.D., for the state disability determination service. (Tr. 396-398) Rohen diagnosed "Major Depressive Disorder, Recurrent, Mild to Moderate." (Tr. 398) Rohen explained, "[s]he does seem mildly depressed, but this is not judged by writer to be a major problem for her, given positive treatment response to Effexor." (Tr. 398) Rohen completed a Psychological/Psychiatric Medical Source Statement in which she documented "[m]ild impairments in concentration." (Tr. 399) "Persistence appears to be affected by low frustration tolerance, but only slightly so." (Tr. 399)

Rohen further opined, "[c]laimant appears easily stressed." (Tr. 399) "Writer's sense is that she resists change because she does not like it, and probably because her hearing loss makes adjustments more challenging, but ultimately it is believed that she can adapt." (Tr. 399) Rohen identified no impairments in understanding and memory. (Tr. 399) She identified mild impairments in concentration and persistence. *Id.*

In December of 2010, Klein was examined by Machelle Martinez, Ph.D., for the state disability determination service. (Tr. 515-518) Martinez diagnosed "Major Depressive Disorder, Recurrent, Mild." (Tr. 517) She summarized: "Concentration was sustained and memory intact." *Id.* "She presented with euthymic mood and identified mild symptoms of depression." *Id.* Martinez identified no limitations related to understanding and memory. (Tr. 518) She identified some limitations completing simple tasks and coping with work stress. *Id.*

Physical Impairments

In December of 2010, Klein was examined by Jeri B. Hassman, M.D., for the state disability determination service. (Tr. 507) Hassman diagnosed "(1) permanent severe bilateral sensorineural hearing loss, (2) chronic TMJ pain . . . especially with eating and chewing, (3) allegations of low, back pain . . . MRI evidence of moderate L5-S1 degenerative disc disease but with excellent preservation of generous lumbosacral spinal canal, [and] (4) allegation of

- 3 -

1  carpal tunnel syndrome." *Id*. She found "[n]o evidence of carpal tunnel syndrome on physical
2  examination." (Tr. 510)

3  Hassman completed a Medical Source Statement of Ability to do Work-Related
4  Activities (physical). (Tr. 510)  She found no exertional impairments but found Klein was
5  limited in hearing and speaking. (Tr. 512) She opined Klein should never climb ladders, ropes,
6  or scaffolds, and should only occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl.
7  (Tr. 512)  She had restrictions on working around heights, moving machinery, and excessive
8  noise. *Id*.

9  In January of 2011, John B. Kurtin, M.D., reviewed the record and completed a Physical
10 Residual Functional Capacity Assessment for the state disability determination service. (Doc.
11 92, 100) He concluded Klein has no exertional limitations, but she should never climb ladders,
12 ropes, or scaffolds and should only occasionally climb ramps or stairs, stoop, kneel, crouch, or
13 crawl. (Tr. 100)  Her hearing is limited, and she should avoid concentrated exposure to noise
14 and hazards such as machinery and heights. (Tr. 101)  Specifically, she is "[l]imited in
15 communication in the workplace in any background noise . . . [a]lso needs to wear aid(s)." *Id*.

16 In May of 2011, Martha Goodrich, M.D., reviewed the record and completed a Physical
17 Residual Functional Capacity Assessment for the state disability determination service. (Doc.
18 105, 114-116)  She agreed with the assessment given by Kurtin. *Id*.

19
20 Hearing Testimony

21 On February 2, 2012, Klein appeared with counsel at a hearing before ALJ Laura Speck
22 Havens. (Tr. 63) Klein orally amended her alleged onset date to October 16, 2009. (Tr. 65)

23 Klein was born in February of 1960. (Tr. 66)  She has a high school diploma. (Tr. 67)
24 She testified that she works as a water aerobics instructor about three hours per week. (Tr. 67)
25 Usually she demonstrates the exercises out of the water, but sometimes she has to get in the
26 water to show them the exercises if they cannot understand her. (Tr. 73) Previously she worked
27 as a busser and server in a restaurant, a caregiver, a retail sales clerk, and a fast food worker.
28 (Tr. 68, 69)

Klein testified that she has a hearing impairment, low back pain, carpal tunnel syndrome in her left hand, TMJ, neck pain, and depression. (Tr. 69) She lives with her husband. (Tr. 70) He helps her with chores, but she washes dishes, mops or sweeps, does the laundry, goes grocery shopping, and enjoys knitting. (Tr. 70-71)   She visits with her sister, helps out with her daughter, and preaches with the Jehovah's Witnesses. (Tr. 74)

Klein testified she has hearing aids to help her hear, but the ones she currently has do not work properly. (Tr. 77) When they work properly, they help, but she still needs additional help to understand. (Tr. 78) She can read lips, but only if the person is looking at her. (Tr. 78) Also, some people do not open their mouths enough, and some men have mustaches that cover their upper lip. (Tr. 83) If they talk too fast, she has to tell them to slow down. (Tr. 84)

The hearing aids work best in a quiet place. (Tr. 81) In a noisy environment, they give her a headache. (Tr. 81)

The ALJ took testimony from Stacia Shogran a vocational expert. (Tr. 86) She asked Shogran to consider a hypothetical individual: 51 years old; with a high school diploma; with no exertional limitations; who can only occasionally climb stairs; never climb ladders; occasionally balance, stoop, bend, kneel, crouch and crawl; who must avoid moderate exposure to heights, moving machinery, and excessive noise; who must have a job with hearing and speaking required only occasionally; and who can understand, remember, and carry out simple job instructions only. (Tr. 86-87)

Shogran opined that she had doubts as to whether such a person could be a retail clerk, but she recognized that Klein did such work before. (Tr. 87) She concluded such an individual could work as an office helper (DOT 239.567-010), assembly worker (DOT 706.687-010), or hand packager (DOT 720.685-078) [sic][1]. (Tr. 87-88)

CLAIM EVALUATION

---

[1] The correct code is apparently DOT 920.587-018.

- 5 -

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. § 404.1520(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[2] to perform past work. 20 C.F.R. § 404.1520(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

---

[2] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

- 6 -

1    In determining whether the claimant retains the ability to perform other work, the ALJ
2  may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20
3  C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846
4  F.2d 573, 576-577 (9th Cir. 1988).  The grids categorize jobs according to their exertional
5  requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d
6  1094, 1101 (9th Cir. 1999).  The grids calculate whether or not the claimant is disabled based
7  on the claimant's exertional ability, age, education, and work experience. *Id.*  The grids are a
8  valid basis for denying claims where they completely and accurately describe the claimant's
9  abilities and limitations. *Id.* at 1101-02.  If the claimant has only exertional limitations, the
10 claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115
11 (9th Cir. 2006).

12    If the claimant has significant non-exertional limitations, the grids do not apply. *Penny*
13 *v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993).  "Non-exertional limitations are limitations that
14 do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.
15 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41.  If significant non-
16 exertional limitations prevent the claimant from performing the full range of work in any
17 exertional category, the ALJ must take the testimony of a vocational expert to deny the claim.
18 *Id.* at 1341.

19
20    The ALJ's Findings
21    At step one of the disability analysis, the ALJ found Klein "did not engage in substantial
22 gainful activity during the period from her alleged onset date of January 1, 1994 [sic] through
23 her date last insured of September 30, 2011 [sic]. . . ." (Tr. 39)  At step two, she found Klein
24 "had the following severe impairments: profound hearing loss; depression; low back pain; and
25 tempromandibular jaw (TMJ) . . . ." (Tr. 39)  At step three, the ALJ found Klein's impairments
26 did not meet or equal the criteria for any impairment found in the Listing of Impairments,
27 Appendix 1, Subpart P, of 20 C.F.R., Part 404.  (Tr. 40)
28

1   The ALJ then analyzed Klein's residual functional capacity (RFC). She found Klein "had the residual functional capacity to perform a full range of work at all exertional levels." (Tr. 41) "Her impairments limit her to occasionally balancing, stooping, kneeling crouching, and crawling, and occasionally climbing stairs." *Id.* "The claimant is precluded from climbing ladders." *Id.* "She must avoid moderate exposure to heights, moving machinery and excessive noise." *Id.* "The claimant has a severe hearing loss and must have a job that requires only occasional hearing and speaking." *Id.* "She is limited to jobs requiring understanding, remembering and carrying out simple job instructions only." *Id.*

At step four, the ALJ found Klein was able to perform her past relevant work as a retail clerk. (Tr. 44) At step five, the ALJ found in the alternative that Klein could work as an office helper, DOT Code 239.567-010, assembler, DOT Code 706.687-010; or hand packager, DOT Code 720.685-078 [sic]. (Tr. 45) Accordingly, she found Klein was not disabled "from October 16, 2009, the alleged onset date, through September 30, 2011[sic], the date last insured . . . ." (Tr. 45)

### STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. § 405(g). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

1  "Where evidence is susceptible to more than one rational interpretation, the ALJ's
2  decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider
3  the entire record as a whole and may not affirm simply by isolating a specific quantum of
4  supporting evidence." *Id.*

5  In evaluating evidence to determine whether a claimant is disabled, the opinion of a
6  treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.
7  1993). The ALJ may reject a treating physician's uncontradicted opinion only if she sets forth
8  clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).
9  If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that
10 opinion only if she provides specific and legitimate reasons supported by substantial evidence
11 in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as
12 to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez
13 v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

14 "The opinion of an examining physician is, in turn, entitled to greater weight than the
15 opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).
16 "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the
17 uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor,
18 even if contradicted by another doctor, can only be rejected for specific and legitimate reasons
19 that are supported by substantial evidence in the record." *Id*. at 830-31.

20 "Where medical reports are inconclusive, questions of credibility and resolution of
21 conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d
22 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is
23 less than credible, however, must have some support in the record. *See Light v. Social Security
24 Administration,* 119 F.3d 789 (9th Cir. 1997).

25 The ALJ need not accept the claimant's subjective testimony of disability, but if she
26 decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester,* 81
27 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the
28 Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

*Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

### DISCUSSION

In this case, the Appeals Council accepted review of the case because the ALJ incorrectly stated Klein's last insured date was September 30, 2011. It actually was one year later, which put it past the date of the ALJ's decision. The Appeals Council essentially adopted the decision of the ALJ and extended it to the entire period between Klein's alleged onset date to the date of the ALJ's decision. Because the Appeals Council adopted the reasoning of the ALJ, the court refers to the final decision of the Commissioner as the ALJ's decision for convenience.

Klein first argues the ALJ erred in finding her job in retail sales was significant gainful activity and in concluding at step four of the disability analysis that she could return to this job and therefore was not disabled. The Commissioner concedes this issue[3], so the court will proceed to Klein's arguments concerning her RFC and the ALJ's step five analysis. (Doc. 21, p. 8); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) ("Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five.").

Klein argues the ALJ erred when evaluating her RFC. Specifically, she argues the ALJ erred by concluding she "has a severe hearing loss and must have a job that requires *only occasional hearing and speaking*." (Tr. 41) (emphasis added)

Klein argues this finding was error because it misstates the opinion of the non-examining state agency physicians, Kurtin and Goodrich. These physicians opined that Klein was "limited in communication in the work place in any background noise . . . [and] [a]lso needs to wear aids(s)." (Tr. 101, 115) They did not, however, state that Klein was limited to only *occasional* hearing and speaking, which in the argot of the Commissioner means "occurring very little up

---

[3] The Commissioner presumes that average earnings of $810 per month or less in 2004 indicates the work is not substantial gainful activity. 20 C.F.R. § 404.1574(b). Klein earned approximately $584 per month in 2004.

- 10 -

to one-third of the time" or up to two hours in an eight-hour day. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001).

Further, Klein argues the ALJ failed to account for her need for face-to-face communication. Klein testified that her hearing aids are not perfect, but "I'll get most of it if I can read their lips." (Tr. 78) She further explained that she can only read lips if the person is facing her. Also, it is difficult for her to read lips if the person is talking too fast. These factors, she argues were not considered by the ALJ in her RFC.

The court concludes the ALJ properly evaluated Klein's RFC. The regulations explain that the ALJ must assess the claimant's residual functional capacity based on "all relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Here, the ALJ considered the reports of the non-examining physicians, the examining physician, and Klein's hearing testimony. (Tr. 41-44) The ALJ concluded Klein's hearing impairment resulted in a functional limitation to jobs requiring only occasional hearing and speaking. The non-examining physicians did not use this phrase, nor did they specifically quantify how much hearing and speaking Klein could do in a work day, but it is the prerogative of the ALJ to analyze the record and assess the claimant's RFC.

Here the ALJ could reasonably conclude that Klein's hearing impairment would limit her ability to hear and require her on occasion to position herself face-to-face with the speaker and on occasion to ask the speaker to speak slowly so she could understand. Because her impairment makes communication more difficult, the ALJ could reasonably conclude that Klein was limited to jobs that would require only occasional hearing and speaking. *See, e.g., Litzsinger v. Astrue*, 2008 WL 420033, 5 (D.Colo. 2008) (Substantial evidence supported the ALJ's finding that the claimant "was capable of working in a job requiring occasional hearing.").

The ALJ also found Klein could not work in an environment with excessive noise. (Tr. 41) This limitation was identified by the examining consultant, Hassman, and the non-examining physicians. (Tr. 42); (Tr. 101, 115, 513) It also results from Klein's difficulty with hearing. (Tr. 513)

- 11 -

Klein argues that even moderate noise would be a problem for her, but ultimately it is for the ALJ to resolve conflicts in the medical record. *See* (Tr. 81) Here, the ALJ found Klein's testimony about the amount of noise that she can tolerate only partially credible. (Tr. 44) Klein's subjective testimony was contradicted by the examining physician, Hassman, and the non-examining physicians. (Tr. 101, 115, 531) The ALJ noted that Hassman is Board-Certified in Physical Medicine and Rehabilitation, which gives her opinion extra weight. (Tr. 42) Klein's testimony was also contradicted by her record of employment in places where moderate noise would be expected and by her "wide range" of activities of daily living. (Tr. 44) The ALJ's finding that Klein's subjective testimony was only partially credible is supported by clear and convincing evidence. The ALJ's finding that Klein must avoid only *excessive* noise is supported by substantial evidence.

Klein further argues the vocational expert erred when she opined that a person with her RFC, as determined by the ALJ, could work as an office helper.

In her hypothetical to the vocational expert, the ALJ described a person who can "understand and remember [and] carry out simple job instructions only." (Tr. 87); (Tr. 41) The vocational expert opined that such a person could work as an office helper (DOT 239.567-010), assembly worker (DOT 706.687-010), or hand packager (DOT 706.685-078) [sic]. (Tr. 87-88) The expert further avowed that her testimony was consistent with the DOT. (Tr. 89)

Klein notes the office helper job and the assembler job are listed in the DOT (Dictionary of Occupational Titles) as having a Reasoning Development Level (RDL) of 2. (Doc. 15, p. 24) She argues an RDL of 2 is incompatible with her limitation to "understand and remember [and] carry out simple job instructions only." (Tr. 87); (Tr. 41) Accordingly, she argues the case must be remanded for the ALJ to provide an explanation for the discrepancy between the expert's testimony and the DOT. (Doc. 15, pp. 21-25) (*citing* SSR 00-04)

Each job in the DOT is given an RDL from 1 to 6. An RDL of 1 identifies a job that requires a worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." 1991 WL 688702. "Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id*. An RDL of 2 requires a

- 12 -

worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Id*. "Deal with problems involving a few concrete variables in or from standardized situations." *Id*.

The phrase "simple job instructions" does not correspond exactly to either the RDL 1 or RDL 2 description. The RDL 1 description contains the word "simple" but further restricts the term in the phrase "simple one- or two-step instructions." The RDL 2 description does not contain the word "simple" but uses a phrase "detailed but uninvolved written or oral instructions" that could encompass the same meaning. *See Moreau v. Commissioner of Social Sec.*, 2009 WL 1530847, *4 (W.D.La. 2009) ("[T]he fact that instructions may be various, furnished in multiple forms, or detailed, does not preclude them from being simple."); *but see Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010) ("Only occupations with a reasoning development level of one necessarily involve only simple instructions."). The Ninth Circuit has not decided the question, and the district courts are split. *See Chase v. Colvin*, 2013 WL 5567082, *4 (D.Or. 2013).

This court concludes the vocational expert did not err by opining that Klein could perform the job of office helper or assembler even though she could "understand and remember [and] carry out simple job instructions only." (Tr. 87); (Tr. 41) RDL 2 is not inconsistent with her functional limitation described by the ALJ and, more important, nothing in the record indicates that Klein should be limited to RDL 1 jobs. RDL 1 describes jobs that require the lowest level of reasoning – for example, "[c]ounting cows as they come off a truck," "pasting labels on filled whiskey bottles," and "tapping the lid of cans with a stick." *Meissl v. Barnhart*, 403 F.Supp.2d 981, 984 (C.D.Cal. 2005). Nothing in the record suggests that Klein has such a severe mental limitation. *See* (Tr. 399, 518) Accordingly, even if there was procedural error, the error was harmless, and substantial evidence supports the decision of the ALJ. *See Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (An ALJ's error is harmless if it "was inconsequential to the ultimate nondisability determination.").

Finally, Klein argues the DOT description of the jobs identified by the vocational expert fail to accommodate her hearing impairment. Specifically she argues the office helper job is

listed as noise level "moderate" and the assembler job is listed as noise level "loud." (Doc. 15, p. 17)

The ALJ found Klein must avoid jobs with excessive noise. The court concluded above that this limitation is supported by substantial evidence. This limitation does not preclude jobs where the noise level is "moderate" such as office helper. *See, e.g., Gonzalez v. Colvin*, 2014 WL 1246361, *10 (D.Ariz. 2014). This limitation might preclude jobs where the noise level is "loud." The court does not reach this issue, however, because the ALJ's finding that Klein could work as an office helper is supported by substantial evidence. She therefore is not disabled.

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, enter an order affirming the Commissioner's decision denying benefits.

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 14 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003). The Local Rules permit the filing of a response to an objection. They do not permit the filing of a reply to a response.

DATED this 8th day of October, 2014.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge